BRAGAW v. SUPREME LODGE KNIGHTS AND LADIES OF HONOR.

(Filed May 28, 1901.)

1. INSURANCE—*Agency—Beneficial Associations—By-Laws.*

   A provision in the by-laws of a beneficial association that one shall become a member of it, subject to the power of the association to change its by-laws, does not authorize the association to change its contract with policy-holders at will.

2. INSURANCE—*Financial Secretary—Local Lodge—Supervision—Effect—Agency.*

   The financial secretary of a local lodge of a beneficial association is the agent of the supreme lodge, and his failure to transmit money received for assessments does not forfeit a policy.

ACTION by John G. Bragaw against the Supreme Lodge Knights and Ladies of Honor, heard by Judge *A. L. Coble* and a jury, at February Term, 1901, of the Superior Court of BEAUFORT County. From a judgment for the plaintiff, the defendant appealed.

BRAGAW *v.* SUPREME LODGE.

*Small & McLean,* and *S. C. Bragaw,* for the plaintiff.
*John L. Bridgers,* and *Chas. F. Warren,* for the defendant.

CLARK, J.   The defendant was duly incorporated in Kentucky in 1878 as *"The Supreme Lodge Knights and Ladies of Honor."* It organized a subordinate lodge, Pamlico Lodge, 715, in Washington, N. C., in 1883 and in September of that year issued a policy for $1,000 to Annie C. Bragaw, in which policy her husband, the plaintiff, John C. Bragaw, was the beneficiary.   The Relief Fund (or insurance) Department of the organization was a separate and distinct feature from its social and fraternal features.   At the date the Bragaw policy was issued, September, 1883, the Constitution and By-Laws which had been adopted in 1881 were in force.   They were amended in several material particulars in 1889, but it is not shown that notice of these amendments was given to the subordinate lodges, nor to the assured or the beneficiary in this policy.   It is not denied that the assured paid all the assessments which were demanded, or of which she had any notice, from the date of her policy or certificate down to the date of her death, and that the same were paid to the Financial Secretary of the subordinate lodge, who was admittedly the proper and only official to whom these payments could be made.   His receipts for payments made by her up to her death in 1895, were in evidence. Notice of death was given as required..   The defendant declined to pay the claim upon the ground that the assured had failed to pay assessments 256 and 257, and because the subordinate lodge had been suspended for non-payment of these two particular assessments.   There is no evidence that Annie C. Bragaw in any particular failed to comply with any law, rule or regulation of the Order.   The defence is that the subordinate lodge did not hold regular meetings, and that the Secretary failed to remit collections, and was suspended.

The plaintiff testified that his wife paid all the assessments made on her from the date of the certificate or policy until her death. That these payments were made to the Financial Secretary of Pamlico Lodge, No. 715. These payments included the assessments Nos. 256 and 257, but the defendant excepted upon the ground that the true question was whether the assessments had been paid to the Supreme Lodge.

This presents the main point involved in this case, *i. e.,* whether the Financial Secretary, for the purpose of collecting money upon policies of insurance was the agent of the Supreme Lodge or of the assured, the individual members. There is another feature of this association, social and fraternal. In all matters of that kind, and in matters of purely local nature, the Financial Secretary, who was chosen by the subordinate lodge, was its agent. But in this matter of insurance there are only two parties to the contract. One is the insurer, the *Supreme Lodge,* which alone is incorporated, which receives the premium and contracts to pay the policy. The other is each individual insurer who pays his premiums to the Financial Secretary, whom the Supreme Lodge has designated as the proper person to whom to pay the premiums, and whose duty it is to forward the money thus received to the Supreme Lodge. The subordinate lodge cuts no figure in the insurance. It is not incorporated. It has no legal entity. It receives no money for insurance, and contracts to pay no policy. The fact that the Supreme Lodge designates to receive the money when paid by the assured one whom the subordinate lodge has elected Financial Secretary, is purely a matter of convenience, but does not affect the legal proposition that such officer is thereby made the agent of the Supreme Lodge for the purpose of notifying the assured (who are called members) of the assessments when made from time to time, collecting the same and forwarding the money to the Supreme Lodge.

In their brief the learned counsel for the defendant say, "the subordinate lodge is the agent of the Supreme Lodge unless otherwise contracted; the provisions of the by-laws of 1889 make it otherwise." The by-laws in force at the date of the policy contained no words making it otherwise. In 1889 the following amendment to the by-laws was adopted: "Sec. 14. In receiving money from members in payment of Relief Fund Assessments, and in all acts performed in complying with the Relief Fund laws of the Order, the subordinate lodge and its officers are the agents of the members and not the agents of the Supreme Lodge." It is not shown that the assured had any notice of or assented to this amendment. A provision that one should become a member subject to the power of the corporation to change its by-laws can not be construed into liberty to change at its will the contract of insurance it has made with each insurer. The company and the assured occupy two entirely different relations. In one it is a company and the other party one of its members. In that relation, the by-laws or constitution can be amended at will of the majority, if done in the legal and prescribed mode. The other relation is that of insurer and insured, and this contract relation can not be altered save by the consent of both parties, and the party alleging that the consent was given must show it. *Strauss v. Life Asso.*, 126 N. C., 971; S. C. at this term.

But passing that by, suppose the company had the power to enact the above by-law without the assent of the assured, it could not have the effect contended for by the plaintiff. The subject has been so recently and thoroughly discussed by the Supreme Court of the United States, and with such a wealth of authority from the Supreme Courts of New York, Pennsylvania, Illinois, Indiana, Iowa, Michigan, Kansas, Wisconsin, Texas and other States, that it is unnecessary to do more than refer to that case which is *Knights of Pythias*

*v. Withers,* 177 U. S., 260, filed 9th April, 1900.  It is there held in an unanimous opinion of the Court, affirming both the Circuit Court and the Circuit Court of Appeals, 59 U. S. App., 177; 32 C. C. A., 182, with an able and exhaustive discussion of the above authorities by Mr. Justice BROWN, as follows: "The failure of a secretary of a local subordinate lodge of the Knights of Pythias to transmit to the general board of control, within the time specified by the general laws of the Order, moneys paid to him in due time by a member, will not be ground for forfeiture of the policy of such member, since the secretary's negligence is not chargeable to the member, but is that of an agent of the Order, notwithstanding a provision in the general laws of the Order to the effect that he is to be regarded as the agent of the member and not of the Order, where the general laws also require the member pay his dues to such secretary only, and provide that he shall transmit at certain specified times all moneys collected by him, and that the local branch, or lodge, shall be responsible to the Supreme Lodge for all such moneys collected by the Secretary."  This will render futile or irrelevant all the other exceptions taken, for if the secretary of the subordinate lodge is the agent of the Supreme Lodge, as far as the contract of insurance goes (here called the Relief Fund Department), inasmuch as it is not controverted that Mrs. Bragaw paid every assessment to the date of her death to one who in law was the agent of the Supreme Lodge, it becomes immaterial whether the subordinate lodge was suspended or not, and whether notice of suspension was given, for as she was in no default, her contract with the defendant that the latter would pay her beneficiary (the plaintiff) $1,000 at her death can not be forfeited either by the misconduct of the secretary, as agent of the defendant, nor by failure of other members of the lodge (if any) who held like policies to pay their assessments.  The suspension of the subor-

dinate lodge could not affect her contract rights.    The Su-
preme Lodge having sent her notice of the assessments through
the secretary, with the unrevoked order to pay him, such pay-
ment is binding on the Supreme Lodge.

In the case above cited it is said, "To invest the secretary
with the duties of an agent, and to deny his agency, is a mere
juggling with words.    Defendant can not thus play fast and
loose with its own subordinates.    Upon its theory the policy-
holders had absolutely no protection.    They were bound to
make their monthly payments to the secretary of the section
(local lodge), who was bound to remit them to the board of
control (Supreme Lodge), but they (the assured) could not
compel him to remit, and were thus completely at his mercy.
* * * The Reports are by no means barren of cases turning
upon the proper construction of this so-called 'agency clause'
under which the defendant seeks to shift its responsibility
upon the insured for the neglect of the secretary to remit on
the proper day.    In some jurisdictions it is held to be practi-
cally void and of no effect; in others it is looked upon as a
species of wild animal, lying in wait and ready to spring
upon the unwary policy-holder, and in all it is eyed with sus-
picion and construed with great strictness.    We think it
should not be given effect when manifestly contrary to the
facts of the case or opposed to the interests of justice. * * *
The object of the clause is in most cases to transfer the re-
sponsibility for his acts from the party to whom it properly
belongs to one who has no knowledge of its existence."    As
in this case, the Supreme Lodge knew at once whether the
secretary remitted for assessments or not, but the assured,
who, upon receipt of notices of assessment from the Supreme
Lodge, paid them to the secretary as directed, had no means
of knowing whether he forwarded the money to the Supreme
Lodge or not.

The above decision has more recently been followed, with

copious citations, in *Murphy v. Independent Order of Jacob,* 27 So. Rep., 624, in which it is held, "Under a by-law of a beneficial association declaring that officers of subordinate lodges shall be agents of the body that elects them, and not of the Grand Lodge, the latter can not escape liability on a cer-tificate of membership by reason of the failure of the subordi-nate lodge to do its duty in paying assessments to the Grand Lodge." Among the precedents cited in both of above cases is *Schunck v. The Geyenseitizer Witteven und Waisen Fond,* 44 Wis., 375, in which under such a formidable nomenclature is found the following sound reasoning: "The subordinate lodge acts for and represents the defendant in making the contract with the member, unless we adopt as correct the idea that the member, by some one-sided arrangement, makes a contract with himself through his agent." In another case also there cited, *Young v. Grand Council,* 63 Minn., 506, it is said, "The assured did all she could. It can not be that a wilful failure of these officers (of the subordinate lodge) can cause a failure of appellant's rights, she not being in fault." On the same general line is our late decision in *Doggett v. Golden Cross,* 126 N. C., 477, where it is held "Where, ac-cording to the constitution and by-laws of the society, notice and proofs of death are to be furnished by officers of the subordinate lodge, of which the deceased was a member, they are the agents for that purpose of the Supreme Commandery, for whose action the beneficiary plaintiffs are not responsible."

"Demand having been made, the certificates shown, death of assured proved, a *prima facie* case was made out for the plaintiff." *Doggett v. Golden Cross, supra.* In addition, it has here been shown, without contradiction, that the as-sured, for twelve years, from the date of her policy in 1883 down to her death in 1895, paid to one who was the agent of the Supreme Lodge, every assessment laid upon her and called for by the defendant, said Supreme Lodge. There

is no evidence in rebuttal of these facts. This renders it unnecessary, as already said, to consider in detail the other exceptions, whose decision is either involved in what has been said, or they have been made irrelevant. There were some errors committed in favor of appellant, but these need not be discussed.

Affirmed.